UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOEY JOSEPH )<br>    Plaintiff, )<br>  )<br>v.   )<br>  )<br>Officer P. IAPICCA, Officer LENTINI, )<br>Officer RUSSELL, Officer VOEGELIN, )<br>and the TOWN OF READING, )<br>    Defendants. )<br>  ) | C.A. NO. 04-11421-JLT |

**PLAINTIFF JOSEPH'S MOTION FOR SUMMARY JUDGMENT AND
INCORPORATED MEMORANDUM OF LAW**

The Plaintiff Joseph hereby moves this Court for summary judgment on his §1983
false arrest claim against the individual Defendant officers, pursuant to Fed. R. Civ. P.
56.  In support of this motion, the Plaintiff incorporates his Statement of Undisputed
Material Facts and submits the following memorandum of law:

**SUMMARY JUDGMENT STANDARD**

Summary judgment is required "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if any, show that
there is no genuine issue as to any material fact and that the moving party is entitled to a
judgment as a matter of law."  Fed. R. Civ. P. 56.  The evidence before the Court must be
construed "in the light most favorable to, and drawing all reasonable inferences in favor
of, the nonmoving party."  Feliciano de la Cruz v. El Conquistador Resort & Country
Club, 218 F.3d 1, 5 (1st Cir. 2000).

Once the moving party has served a properly supported motion asserting
entitlement to summary judgment, however, the burden is on the non-moving party to
present evidence showing the existence of a trial worthy issue.  Gulf Coast Bank & Trust

Co. v. Reder, 355 F.3d 35, 39 (1st Cir. 2004), citing Anderson v. Liberty Lobby Inc., 477

U.S. 242, 248 (1986).  For the purpose of summary judgment, an issue of fact is

"genuine" if it "may reasonably be resolved in favor of either party."  Maldonado-Denis

v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994) (citations omitted).  "Material"

facts are those which possess "the capacity to sway the outcome of the litigation under

the applicable law."  Nat'l Amusements v. Town of Dedham, 43 F.3d 731, 735 (1st Cir.

1995).

## ARGUMENT

I.    **THE PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HIS
      FALSE ARREST CLAIM BECAUSE THERE IS NO MATERIAL
      DISPUTE THAT THE DEFENDANTS LACKED PROBABLE CAUSE TO
      ARREST HIM**

Plaintiff is entitled to summary judgment on his false arrest claim because, even

taking the evidence in a light most favorable to the Defendants, there is no genuine

dispute that the officers lacked probable cause to make the arrest.  Probable cause for an

arrest exists when the arresting officer, acting upon apparently trustworthy information,

reasonably concludes that a crime has been (or is about to be) committed and that the

putative arrestee likely is one of the perpetrators.  Beck v. Ohio, 379 U.S. 89, 91 (1964).

Courts use an objective standard when determining the existence of probable cause.

Valente v. Wallace, 332 F.3d 30, 32 (1st Cir. 2003).  Whether probable cause exists

depend on the totality of the circumstances.  Acosta v. Ames Dep't Stores, Inc., 386 F.3d

5, 10 (1st Cir. 2004).

When the facts of the case are not in dispute, however, "[i]t is pointless to submit

. . . [a] probable cause question[] to the jury."  Bolton v. Taylor, 367 F.3d 5, 8 n.2 (1st

Cir. 2004).  Probable cause to arrest is a "mixed question of law and fact," suitable for

determination by the court.  <u>Ornelas</u> v. <u>United States</u>, 517 U.S. 690, 696 (1996).

In this case, the Plaintiff was arrested because he allegedly failed to obey the

Defendant officers' commands.  According to the Defendants, he provided his first name

but would not answer further questions and would not leave the engineer's compartment

"until his supervisor arrive[d]."  <u>See</u> Plaintiff's Stmnt. of Undisputed Facts at 8.

However, the Plaintiff also informed the officers that his supervisor would be arriving in

a few minutes, which, given the nature of the accident the officers likely suspected

anyway.  Thus, the Defendants relied on only two factors in making the arrest: the

Plaintiff's reluctance to exit the train and his request to wait for his supervisor to arrive

before answering further questions.  Therefore, the facts known to the officers did not

support probable cause to believe the Plaintiff was engaging in disorderly conduct or any

other offense.

### A.  THE DEFENDANTS LACKED ANY BASIS TO ARREST THE PLAINTIFF FOR FAILURE TO OBEY AN OFFICER

The Plaintiff was falsely arrested for refusal to provide identification to a police

officer.  <u>See</u> M.G.L. ch. 90, §25.  Defendants admit that this charge applies only to motor

vehicle drivers yet contend that it was Defendant Russell's intention to arrest the Plaintiff

for disorderly conduct all along.  The record suggests, however, that the Plaintiff was

arrested for the motor vehicle offense and that the Defendants only later realized that this

law does not apply to trains.  <u>See</u> Plaintiff's Stmnt. of Undisputed Facts at 8, 13, 15-20.

Upon realizing there was no basis for the charge of "refusal to obey an officer," they

changed the charge to disorderly conduct, and tried to justify the arrest by pointing to the

Plaintiff's refusal to exit the engineering compartment.  As such, the arrest was

unconstitutional.  See Sheehy v. Town of Plymouth, 191 F.3d 15, 21 (1st Cir. 1999)

("We [will] not permit the officers to validate the arrest retroactively based on earlier

conduct that unmistakably did not serve as the basis for the challenged arrest.")

### B.  THE DEFENDANTS CANNOT ESTABLISH THEY HAD PROBABLE CAUSE TO ARREST THE PLAINTIFF FOR DISORDERLY CONDUCT

Even assuming that the Plaintiff was arrested for disorderly conduct, there was no

probable cause for that offense either.  The Supreme Judicial Court of Massachusetts has

stated that a person is guilty of "disorderly conduct" if he intentionally alarms the public

with threatening, fighting or violent acts or if he intentionally alarms the public by

engaging in physical acts which create a hazardous condition and serve no legitimate

purpose:

> . . . if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: engages in fighting or threatening, or in violent or tumultuous behavior; or creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

Commonwealth v. A Juvenile, 368 Mass. 580, 586 (1975).  Moreover, this definition of

disorderly conduct encompasses only activities not implicating the "lawful exercise of a

First Amendment right."  Iacobucci v. Boulter, 193 F.3d 14, 24 (1st Cir. 1999).  To

ensure that result, the SJC has interpreted the statute as only covering conduct, not

expressive activity.  As such, the SJC has held that a verbal challenge, even when

coupled with a refusal to obey a police officer's orders, does not constitute disorderly

conduct within the meaning of the statute.  Id.

4

Massachusetts courts have also held that the statute adopts the Model Penal Code's definition of disorderly.[1]  As such, it also incorporates the Code's definition of recklessness: "[a] person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct."  Commonwealth v. Feigenbaum, 404 Mass. 471, 475 (1989), citing Model Penal Code §2.02 (2)(c).  Thus, in order for the Defendants to show that the Plaintiff's had the requisite mens rea to be considered "disorderly," they must, at the very least, show that he was aware of the likely consequences of his behavior and that he nonetheless consciously chose to ignore those consequences.[2]

The actus reus element of the statute can be broken into two separate theories under which the Commonwealth can bring disorderly conduct charges.  The first is under a theory that someone "engage[d] in fighting or threatening, or in violent or tumultuous behavior.  A Juvenile, 368 Mass. at 586.  There is absolutely no evidence in the record that the Plaintiff was acting in a violent, threatening or fighting manner.  In fact, the police reports indicate he was arrested because he did not speak or move at all when ordered to do so, not that he acted violently.  See Plaintiff's Stmnt. of Undisputed Facts at 3, 6, 8.  Moreover, since the Plaintiff did not attract public attention (at least not until

---

[1] See Commonwealth v. Peace Chou, 433 Mass. 229, 232 (2001) ("Model Penal Code §250.2: (1) Disorderly Conduct. Offense Defined. A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (a) engages in fighting or threatening, or in violent or tumultuous behavior; or …(c) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor. Public means affecting or likely to affect persons in a place to which the public or a substantial group has access.") (quotations omitted).

[2] A showing that the Plaintiff "should have been aware," of the consequences of his refusal to cooperate is not sufficient.  Defendants must show that he was actually and subjectively aware.  See Farmer v. Brennan, 511 U.S. 825, 836-37 (1994) ("The civil law generally calls a person reckless who acts or…fails to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known…The criminal law, however, generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware.")

5

after he was arrested), he can not be said to have acted tumultuously.  See

Commonwealth v. Sinai, 47 Mass. App. Ct. 544, 548 (1999), accord Commonwealth v.

Mulero, 38 Mass. App. Ct. 963, 963-65 (1995) (noisy behavior that attracts a crowd of

onlookers is a common feature of cases involving "tumultuous" conduct); A Juvenile,

368 Mass. at 597 (noting that the statute covers "'tumultuous behavior,' which, while

perhaps not physically violent, may nevertheless be characterized as involving riotous

commotion and excessively unreasonable noise so as to constitute a public nuisance.");

see also Commonwealth v. Mulvey, 57 Mass. App. Ct. 579, 584 (2003) (police officers

not considered "the public," and their presence does not satisfy "public" element of

disorderly conduct charge premised on tumultuous behavior.")

        The second theory of disorderly conduct requires that the Commonwealth prove

that a defendant purposely or recklessly, with intent to alarm the public, "create[d] a

hazardous or physically offensive condition by any act which serves no legitimate

purpose of the actor."  Id.  However, any such argument under this theory fails for three

reasons.

        First, the Defendants cannot show that the Plaintiff "purposely" or "recklessly"

created a hazardous condition with "intent" to alarm.  As discussed above, it is not

sufficient that the officers believed the Plaintiff's conduct created a dangerous condition,

the Defendants must show they had probable cause to believe that the Plaintiff purposely

did so, or was aware of the risk and chose to ignore it.

        Second, even if this Court accepts that the Defendants had probable cause to

believe the Plaintiff's mens rea rose to a level of recklessness, they cannot show that his

actions caused a "hazardous condition."  The Defendants cannot rationally argue that the

"hazardous condition" was the possibility that the Plaintiff would restart the train and drive over the injured woman and any paramedics attending to her. Such a suggestion is preposterous, and is not a reasonable inference to be drawn in the Defendants' favor. A mere suspicion of some remote possible harm cannot give rise to probable cause that the Plaintiff, at the time of arrest, had purposefully created the dangerous condition necessary for a disorderly conduct charge. There is no evidence that he had one foot on the gas pedal or even his hands on the wheel. In fact, the Plaintiff informed the officers that he simply wanted to wait until his supervisors arrived before submitting to their requests, as he had been trained to do in the event of an emergency. If anything, the officers created the dangerous condition by arresting the Plaintiff and leaving the engineering compartment unoccupied.

Third, their argument fails[3] because the Plaintiff's actions served a legitimate purpose, and were thus not disorderly within the meaning of the statute. Courts have held that the "legitimate purpose" defense is wide-reaching, and is not confined to mere political or First Amendment expression. Commonwealth v. Zettel, 46 Mass. App. Ct. 471, 476 (1999). "[T]he [defense] . . . is [defined] broadly to exclude. . . any conduct that directly furthers some legitimate desire or objective of the actor." Model Penal Code §250.4; see also Zettel, 46 Mass. App. Ct. at 476 (mother illegally double parking her car to pick up her son at school is a legitimate purpose); Commonwealth v. Wheaton, 409 Pa. Super. 622, 628 (1991) (defendant was not guilty of harassment because his efforts to maintain his water supply constituted a legitimate purpose).

---

[3] It is also unclear whether the "public" element of disorderly conduct was satisfied. See Mulvey, 57 Mass. App. Ct. at 584. The engineering compartment is not public property and there is no evidence that anyone actually saw the interaction between the police and the Plaintiff.

In this case, the Defendants lacked probable cause to arrest because when the Plaintiff declined to leave the engineering compartment and deferred all police questions to his supervisors, he was complying with Massachusetts Bay Commuter Railroad policy and a superior's order, two totally legitimate purposes. See Plaintiff's Stmnt. of Undisputed Facts at 5, 6. Whether the Defendants believed this purpose was legitimate does not matter, the law only requires that the Plaintiff subjectively believed his purpose was legitimate. See Zettel, 46 Mass. App. Ct. at 476. Since the Plaintiff did believe his conduct served a legitimate purpose, he had a complete defense to the disorderly charge. See also Iacobucci, 193 F.3d at 25 ("A police officer is not a law unto himself; he cannot give an order that has no colorable legal basis and then arrest a person who defies it.")

## CONCLUSION

Therefore, the Plaintiff moves this Court to grant summary judgment on his false arrest claim against each Defendant officer.

<div style="margin-left:50%">

Respectfully Submitted,
The Plaintiff Joey Joseph
By his attorneys

</div>

DATED: September 22, 2005

<div style="margin-left:50%">

//S//Michael Tumposky
Stephen B. Hrones (BBO No. 242860)
Jessica D. Hedges (BBO No. 645847)
Michael L. Tumposky (BBO No. 660618)
HRONES, GARRITY & HEDGES
Lewis Wharf–Bay 232
Boston, MA 02110-3927
T) 617/227-4019

</div>

**CERTIFICATE OF SERVICE**

       I, Michael Tumposky, hereby certify that, on this 22nd day of September, 2005, I served one true and correct copy of the foregoing, where unable to do so electronically, by United States First-Class Mail, postage prepaid, to all counsel of record in this matter.

<u>//S//Michael Tumposky</u>
Michael Tumposky