UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOEY JOSEPH )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>Officer P. IAPICCA, Officer LENTINI, )<br>Officer RUSSELL, Officer VOEGELIN, )<br>and the TOWN OF READING, )<br>    Defendants. )<br>) | C.A. NO. 04-11421-JLT |

**PLAINTIFF JOSEPH'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to L.R. 56.1, the Plaintiff hereby submits the following statement of undisputed material facts:

1. On February 10, 2004, a woman stepped in front a commuter train driven by the Plaintiff, Joey Joseph, and was struck before the Plaintiff could bring the train to a complete stop.  Deposition of Joey Joseph, April 13, 2005, pg. 26, attached hereto as Exhibit A.

2. When the Reading police arrived on the scene, several officers approached the front of the train.  One officer asked the Plaintiff, "where is the engineer?"  Ex. A, pg. 66.

3. When the Plaintiff replied that he was the engineer, an officer asked for his name, social security number and address.  The Plaintiff provided his full name, but told the officers he would defer any other questions because "[his] supervisor was on the way" and because he was "shaken up."  Ex. A, pgs. 66-68.

4. Supervisors are often on the scene of an accident within minutes.  Deposition of John Santa Maria, July 15, 2005, pgs. 42-43, attached hereto as Exhibit B.  The

train's conductor, John Walsh, specifically called supervisor John Santa Maria that day because he lived nearby and could drive to the station in less than five minutes. Deposition of John Walsh, July 15, 2005, pg. 27, attached hereto as Exhibit C. Walsh then told the Plaintiff that Santa Maria was en route to the scene. Ex. C, pg. 29.

5. Massachusetts Bay Commuter Rail policy is that supervisors, not engineers, are expected to handle communications with local police. Ex. B, pg. 39; Ex. C, pg. 52.

6. In addition to requesting his personal information, the officers also asked the Plaintiff to exit the engineering compartment. The Plaintiff informed them that he could not leave because he was "responsible" for the equipment. Ex. A, pg. 78. He had also been ordered by his conductor, Walsh, to "stay in the cab." Ex. B, pg. 47.

7. Defendant Iapicca then arrived and asked the Plaintiff "for some identification." Deposition of Pasquale Iapicca, May 23, 2005, pg. 32, attached hereto as Exhibit D.

8. When the Plaintiff reiterated that he wished to wait for his supervisors, Iapicca told him he could be arrested for "refusing to submit to a police officer." Ex. D, pg. 32.

9. This refusal "frustrated" and "aggravated" the officers because they could not get "any information" for their "report." Ex. D, pg. 34; Deposition of Bruce Russell, May 23, 2005, pg. 27, attached hereto as Exhibit E.

10. The officers then called Defendant Russell over to the engineering compartment, telling him that the "train operator" was not being cooperative. The officers never told Russell anyone else was in the front cab other than the Plaintiff. Ex. E, pg. 19.

11. More specifically, Iapicca told Russell that the Plaintiff was refusing to comply with their requests for identification, Ex. D, pg. 38, and that he did not want to leave the engineering compartment. Ex. D, pg. 40.

12. As a result, Russell ordered Iapicca to arrest the Plaintiff. Ex. E, pg. 14. Russell then speculated to one of his officers that the Plaintiff's alleged non-compliance was due to "either drugs or warrants." Ex. C, pg. 30.

13. Iapicca told the Plaintiff he was under arrest for "failure to submit to an officer," Ex. D, pg. 45, which Iapicca interpreted to mean "failure to cooperate with an officer" by refusing to give "identification." Ex. D, pg. 41.

14. Defendants Lentini and Vogelin were present during the interaction and assisted in the arrest. Ex. D, pg. 43.

15. Once back at the station, Iapicca had a conversation with another officer, Bruce Stamatis, about the charges against the Plaintiff. Iapicca told him the charge was "failure to obey" under M.G.L. ch. 90 §25, and Stamatis, according to Iapicca, said that "it was a bad arrest, that we had no justification because it's not a motor vehicle, and he [also] indicated he wanted to release Mr. Joseph." Ex. D, pg. 57.

16. Iapicca then suggested that Stamatis speak with Defendant Russell, Ex. D, pg. 57, so Stamatis called Russell on the radio and asked him to call the station on a landline. Ex. E, pg. 16.

17. During this conversation, when asked by Stamatis what the charge was, Russell first paused for several seconds. He then stated, "[w]ell worst case you could go with disorderly, but how about refusing to…" He was then cut off by Stamatis who told him that the other charge only applied to motor vehicles. Russell replied, "ok, let's go with disorderly…um, yeah, public place, people in fear, the guy's a real shithead." Affidavit of Michael Tumposky, ¶4, attached hereto as Exhibit F.

18. Stamatis was concerned about a potential lawsuit: "There is a lot of emotions running here, the only thing that I want to keep a clear head about is that we make sure that we are making the right decision you know? Cuz' I don't want to be in the middle of a lawsuit, you know what I'm saying?" Ex. F, ¶4.

19. After being informed of Stamatis' concern, Russell concurred. He then added, "alright, I would go with disorderly…you gotta go with disorderly…you gotta go with disorderly." Ex. F, ¶4.

20. However, Stamatis also believed that there was no probable cause to arrest the Plaintiff for disorderly conduct. Ex. D, pg. 61; Ex. E, pgs. 30-31. The Chief of Police, Robert Silva, thought the elements of disorderly conduct had been satisfied. Ex. D, pg.63. Nevertheless, Chief Silva released the Plaintiff without pressing any charges. Report of Bruce Russell, attached hereto as Exhibit G; Report of Pasquale Iapicca, attached hereto as Exhibit H.

                                                Respectfully Submitted,
                                                The Plaintiff Joey Joseph
                                                By his attorneys

DATED: September 22, 2005

                                                <u>//S//Michael Tumposky</u>
                                                Stephen B. Hrones (BBO No. 242860)
                                                Jessica D. Hedges (BBO No. 645847)
                                                Michael L. Tumposky (BBO No. 660618)
                                                HRONES, GARRITY & HEDGES
                                                Lewis Wharf–Bay 232
                                                Boston, MA 02110-3927
                                                T) 617/227-4019

**CERTIFICATE OF SERVICE**

    I, Michael Tumposky, hereby certify that, on this 22nd day of September, 2005, I served one true and correct copy of the foregoing, where unable to do so electronically, by United States First-Class Mail, postage prepaid, to all counsel of record in this matter.

                                                <u>//S//Michael Tumposky</u>
                                                Michael Tumposky