UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOEY JOSEPH,<br>　　　　　　Plaintiff<br><br>VS.<br><br>OFFICER P. IAPICCA, OFFICER LENTINI,<br>OFFICER RUSSELL, OFFICER VOEGELIN, AND<br>THE TOWN OF READING,<br>　　　　　　Defendants | ）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>） |

CIVIL ACTION
NO. 04-11421-JLT

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO
## PLAINTIFF JOSEPH'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Defendants Reading Police Officers Pasquale Iapicca, Charles Lentini, Bruce
Russell and Christopher Voegelin and defendant Town of Reading submit this
memorandum in opposition to plaintiff Joey Joseph's motion for summary judgment on
Count I of his complaint alleging that the individual officers falsely arrested him in
violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United
States Constitution.    Plaintiff's motion is based upon his version of the facts, which
Defendants dispute, rather than the facts viewed in the light most favorable to the non-
moving party (here the Defendants), as the law requires.    As will be demonstrated
below, key material facts are in dispute, which warrant submission to a jury and
preclude the entry of summary judgment.    Therefore, plaintiff's motion should be
denied.

## SUMMARY JUDGMENT STANDARD

Under Rule 56 (c) of the Federal Rules of Civil Procedure, the moving party is required to demonstrate that there is no genuine issue of material fact using specific, provable facts. <u>Aponte Matos v. Toledo Davila,</u> 135 F.3d 182, 186 (1st Cir. 1998) (quoting <u>Febus-Rodriguez v. Betancourt-Lebron,</u> 14 F.3d 87, 91 (1st Cir. 1994). The facts are considered in the light most favorable to the non-moving party. <u>Id</u>. The non-moving party is entitled "'to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in [the evidence] resolved favorably to him . . . .'" <u>Greenburg v. Puerto Rico Maritime Shipping Authority,</u> 835 F.2d 932, 936 (1st Cir. 1987) (internal citation omitted). The moving party bears the burden of establishing that there is no genuine issue of material fact. <u>Celotex Corp. v. Catrett,</u> 477 U.S. 317, 325 (1986). If the moving party does not meet its burden, summary judgment is not appropriate.

### DEFENDANT'S OPPOSITION TO PLAINTIFF JOSEPH'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND DEFENDANTS' STATEMENT OF ADDITIONAL DISPUTED MATERIAL FACTS

Contrary to the above-stated summary judgment rules, Plaintiff's Statement of Undisputed Material Facts and his motion rely on a version of facts viewed in the light most favorable to him, and ignore testimony and proof favorable to Defendants. Therefore, Defendants dispute Plaintiff' statement of facts and present their own version by filing herewith and incorporating by reference Defendants' Opposition to Plaintiff Joseph's Statement of Undisputed Material Facts and Defendants' Statement of Additional Disputed Material Facts ("DOF"), pursuant to Local Rule 56.1.

As the DOF demonstrates, Defendants contest several of Plaintiff's purportedly undisputed material facts. Key among those is whether the Reading Police Officers asked Plaintiff for his identification and whether he provided that information. Plaintiff asserts that the police did not ask him for his identification but if they had, he would have provided it. The individual officers testify that they repeatedly asked Plaintiff for his identification, but he refused to provide it. See DOF ¶ 33, Def. Ex. 4 at 24, 33 (Iapicca Dep.), DOF ¶ 36, Def. Ex. 4 at 31-32 (Iapicca Dep.), DOF ¶37, Def. Ex. 5 at 13-14 (Russell Dep.). For purposes of this motion, this court must accept the Defendants' assertion that the Plaintiff refused to provide any identification when asked to do so by three successive Reading Police Officers despite knowing that he should do so upon request. DOF ¶ 56, Def. Ex. 5 at 46 (Russell Dep.); Def. Ex. 1 at 72, 74, 89 (Demodena Dep.)

Defendants also include in the DOF Defendants' Statement of Additional Disputed Material Facts. Viewed in the light most favorable to the Defendants, those facts are as follows:

When the Reading Police Officers arrived on the scene of the commuter rail train accident on February 10, 2004, they found a woman wedged under the train with emergency workers trying to save her life. DOF ¶ 21, Def. Ex. 5 at 13 (Russell Dep.), DOF ¶ 24, Def. Ex 4 at 23-24 (Iapicca Dep.), Def. Ex. 5 at 13 (Russell Dep.). The train's engine was still running, hundreds of frightened passengers were on the train and a large crowd of terrified bystanders stood on the platform. Id. The Officers' first priority was to identify the victim, ensure that she received medical attention and control the crowd. DOF ¶ 25, Def. Ex. 5 at 12-13 (Russell Dep.).

Officer Fredricks was given the task of obtaining identifying information from the operator of the train. DOF ¶ 27, Def. Ex. 4 at 23 (Iapicca Dep.). He observed the Plaintiff seated in a front control compartment dressed in civilian clothes with no visible identification as an employee of the Massachusetts Bay Commuter Rail ("MBCR"). DOF ¶ 30, Def. Ex. 4 at 30-31 (Iapicca Dep.). When Officer Fredricks asked Plaintiff to show his identification, Plaintiff refused despite repeated requests. DOF ¶ 33, Def. Ex. 4 at 24, 33 (Iapicca Dep.). At that point, Officer Fredricks asked Officer Iapicca for assistance. DOF ¶ 34, Def. Ex. 4 at 24, 33 (Iapicca Dep.). Officer Iapicca then asked Plaintiff several times to identify himself. Plaintiff again refused to do so. DOF ¶ 36, Def. Ex. 4 at 31-32 (Iapicca Dep.). The two officers then sought help from Sergeant Russell, the ranking officer at the scene of the accident. DOF ¶ 36, Def. Ex. 4 at 31-32 (Iapicca Dep.). Sergeant Russell asked Plaintiff several times to identify himself. Plaintiff persisted in his refusal to provide identifying information. DOF ¶ 37, Def. Ex. 5 at 13-14 (Russell Dep.).

Thus, three different police officers gave Plaintiff three separate opportunities to identify himself, but he refused to cooperate each time. DOF ¶ 38, Def. Ex. 4 at 24, 31-34, 39 (Iapicca Dep.), Def. Ex. 5 at 13-14 (Russell Dep.). After Plaintiff's persistent refusals to cooperate and his increasingly odd behavior, Officer Iapicca asked Plaintiff to leave the control compartment. DOF ¶ 39, Def. Ex. 4 at 39 (Iapicca Dep.). Plaintiff refused to do so and yelled at the officers to come and get him if they wanted him. DOF ¶ 40, Def. Ex. 4 at 38 (Iapicca Dep.), Def. Ex. 5 at 20-21 (Russell Dep.).

The large crowd of passengers and bystanders at the scene of the accident were terrified. DOF ¶ 44, Def. Ex. 5 at 36 (Russell Dep.). Plaintiff's increasingly irrational and bizarre behavior contributed to their fear. DOF ¶ 45, Def. Ex. 5 at 39-40 (Russell Dep.). Officers Russell and Iapicca became concerned that allowing an unidentified

4

person who was acting irrationally to sit behind the controls of a train with its engine running in an emergency situation would undermine their ability to keep the accident scene secure. DOF ¶ 43, Def. Ex. 4 at 46 (Iapicca Dep.), Def. Ex. 5 at 24 (Russell Dep.). Therefore, based on Plaintiff's bizarre behavior and the officers' concern for public safety, Officer Russell, the ranking officer at the accident scene, decided to arrest Plaintiff for disorderly conduct. DOF ¶ 46, Def. Ex. 4 at 41 (Iapicca Dep.); DOF ¶ 47, Def. Ex. 5 at 14 (Russell Dep.). Even after Plaintiff was arrested, he refused to allow the Officers to view the identification he carried in his wallet, which was in his back pocket. DOF ¶ 51, Def. Ex. 4 at 53 (Iapicca Dep.).

The police took Plaintiff to the Reading police station for booking. DOF ¶ 52, Def. Ex. 4 at 55-56 (Iapicca Dep.). At the police station, they learned Plaintiff's identity from the driver's license he carried in his wallet. DOF ¶ 53, Def. Ex. 4 at 69-70 (Iapicca Dep.). Following a conversation among the Reading police and representatives of the MBCR, the Massachusetts Bay Transit Authority and the union, the police decided to drop the charges against Plaintiff. DOF ¶ 54, Def. Ex. 1 at 70 (Demodena Dep.), Def. Ex. 2 at 31-33 (Santa Maria Dep.). They released him without being charged. DOF ¶ 55, Def. Ex. 4 at 78 (Iapicca Dep.).

## ARGUMENT

I.  **THE POLICE OFFICERS HAD PROBABLE CAUSE TO ARREST PLAINTIFF WHEN HE REFUSED TO PROVIDE HIS IDENTIFICATION AFTER THE CROWDED TRAIN HE WAS DRIVING STRUCK A WOMAN AND HIS BEHAVIOR BECAME INCREASINGLY IRRATIONAL AND HAZARDOUS TO PUBLIC SAFETY.**

Plaintiff Joseph argues that Defendants lacked probable cause to arrest him for disorderly conduct or any other offense. Plaintiff Joseph's Motion For Summary Judgment and Incorporated Memorandum of Law ("Plaintiff's Memorandum"), p. 3. As will be demonstrated below, the police officers were justified

in asking for Plaintiff's identification when they arrived on the scene of the accident. They also had probable cause to arrest him for disorderly conduct based on his irrational conduct which became increasingly bizarre and hazardous to public safety.

        **A.**    **The Individual Officers Were Justified in Asking Plaintiff For His Identification As He Sat in the Control Compartment of the Train Dressed in Civilian Clothes After the Train He Was Driving Struck A Woman.**

As the United States Supreme Court recognized recently, "[a]sking questions is an essential part of police investigations." Hiibel v. Sixth Judicial District Court of Nevada, Humbolt County, 124 S. Ct. 2451, 2458 (2004). Further, "interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." Id. quoting INS v. Delgado, 466 U.S. 210 (1984). Under the doctrine established in Terry v. Ohio, 392 U.S. 1 (1968), a law enforcement officer's "reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate." Hiibel, 124 S. Ct. at 2458 (internal citations omitted). The officer's action must be justified at its inception and "reasonably related in scope to the circumstance" which justified that initial action. Terry, 392 U.S. at 20. Thus, "[q]uestions concerning a suspect's identity are a routine and accepted part of many Terry stops," and serve important government interests:

> Knowledge of identity may inform an officer that a suspect is wanted for another offense, or has a record of violence or mental disorder. On the other hand, knowing identity may help clear a suspect and allow the police to concentrate their efforts elsewhere.

Hiibel, 124 S. Ct. at 2458.

When the officers arrived at the scene of the accident, a woman was wedged

beneath the commuter train. The train engine was still running.  The Plaintiff was seated in the control compartment at the front of the train dressed in civilian clothes and without any picture or other identification.[1] DOF ¶ 30, Def. Ex. 4 at 30-31. Hundreds of passengers and bystanders on the train's platform were frightened, and the entire accident scene was chaotic.  DOF ¶ 22, Def. Ex. 5 at 27 (Russell Dep.), DOF ¶ 44, Def. Ex. 5 at 36 (Russell Dep.).  Under those circumstances, the officers' certainly had reasonable suspicion to believe that the Plaintiff may have been involved in committing a crime as a result of the fact that the train had struck and injured a pedestrian. The officers certainly were justified in asking Mr. Joseph for his identification to ensure that he was indeed the authorized operator of the train. His refusal to produce any identification whatsoever only heightened suspicion as to his true identity and mental condition.

### 1.    Plaintiff Had No Constitutional Right To Refuse To Answer The Police Officers' Request For Identification.

The Hiibel case also makes clear that Plaintiff did not have a federal constitutional right to refuse the officers' request for identification during the course of their lawful investigation.  See Marrs v. Tuckey, 362 F.Supp.2d 927, 930 (E.D. Mich. 2005) (citing Hiibel).  The Fourth Amendment does not provide a shield against an otherwise valid demand for identification.   The Supreme Court has further noted that a lawful arrest for identity "has an immediate relation to the purpose, rationale and practical demands of a Terry stop.  The threat of criminal sanction [under Nevada's statute] helps ensure that the request for identity does not become a legal nullity." Hiibel, 124 S. Ct. at 2459.

---

[1] M.G.L. c. 160, § 177 provides, "[e]very railroad corporation shall provide a uniform hat or cap and distinguishing badge, which shall be worn by all its employees whose duties relate immediately to the transportation of passengers or their baggage."

Here, as in <u>Hiibel</u>, the officers' request for identification was a commonsense inquiry, which does not contravene the guarantees of the Fourth Amendment. <u>Hiibel</u>, 124 S. Ct. at 2460. The officers observed a seriously injured pedestrian under the train, a number of emergency workers were under the train, and the train engine was running. DOF ¶ 29, Def. Ex. 4 at 34-35 (Iapicca Dep.), Def. Ex. 5 at 14 (Russell Dep.). The person who identified himself as the engineer was disoriented, and the accident scene was chaotic with frightened passengers and bystanders. DOF ¶ 41, Def. Ex. 4 at 38 (Iapicca Dep.), DOF ¶ 44, Def. Ex. 5 at 36 (Russell Dep.). The officers were certainly entitled to ask for some official identification to ensure that the plaintiff was indeed an authorized operator. Mr. Joseph's refusal of this simple request made no sense whatsoever. As a matter of public policy and effective law enforcement, police officers must be authorized to insist that a person identify himself or herself in the course of a lawful investigation when that person is in control of a dangerous instrumentality which could well cause serious injury or death if activated. This is especially so following the terrorist attacks of September 11, 2001. The officers would have been placing others in danger had they left this irrational, confused person in control of the train.

**B.**    **The Officers Had Probable Cause To Arrest Joey Joseph For Disorderly Conduct When His Behavior Became Increasingly Irrational and Threatening to Public Safety.**

        **1.**    **A reasonably competent police officer with knowledge of the facts known to the Defendant officers would have concluded that Plaintiff's conduct was disorderly or violated another statute.**

Under the Fourth Amendment of the United States Constitution, probable cause exists if "the facts and circumstances within [a police officer's] knowledge and of which [the officer] had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution" to believe that a crime has been committed or is being committed. <u>Alexis v. McDonald's Restaurants of Massachusetts, Inc.</u> 67 F.3d

341 (1st Cir. 1995) quoting <u>Carroll v. United States</u>, 267 U.S. 132 (1925); <u>United States v. Drake</u>, 673 F.2d 15 (1st Cir. 1982). The "probable cause" analysis entails " 'an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time' and not [an assessment of] the officer's state of mind at the time the challenged action was taken." <u>Id.</u> quoting <u>Maryland v. Macon</u>, 472 U.S. 463 (1985) (quoting <u>Scott v. United States</u>, 436 U.S. 128 (1970)). Probable cause will be found if "the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [Defendant] had committed or was committing an offense." <u>Id.</u> quoting <u>Rivera v. Murphy</u>, 979 F.2d 259 (1st Cir. 1992).

In actions brought pursuant to 42 U.S.C. §1983 for false arrest, probable cause need not exist for the offense the officer states as the reason for the arrest so long as probable cause exists for an arrest on another offense. <u>Devenpeck v. Alford</u>, 125 S. Ct. 588 (2004). The United States Supreme Court recently rejected the rule that "the offense establishing probable cause must be 'closely related' to, and based on the same conduct as, the offense identified by the officer at the time of the arrest." <u>Id.</u> at 594. As that court said:

> [An arresting officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause . . . 'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken so long as the circumstances, viewed objectively, justify that action.'

<u>Id.</u> (internal citations omitted).

Thus, while an arresting officer's subjective knowledge of facts sufficient to constitute probable cause is central to evaluation of the propriety of an arrest, the officer's view of the legal basis for the arrest is not important. <u>Biddle v. Martin</u>, 992 F.

2d 673 (7th Cir. 1993). The issue is whether a reasonably competent police officer with knowledge of the facts actually known by the arresting officer, would have concluded that probable cause existed to arrest for the offense the arresting officer stated or for any other offense arising from the circumstances. <u>Devenpeck</u>, 125 S. Ct. at 594.

>   **2.    The Officers Had Probable Cause To Arrest Plaintiff for Disorderly Conduct When His Behavior Affected the Public, Created a Public Safety Threat For No Legitimate Reason and Recklessly Created a Risk of Public Alarm.**

Massachusetts General Laws c. 272, § 53, authorizes prosecutions for disorderly conduct. The Massachusetts Supreme Judicial Court has incorporated into that statute the definition of "disorderly" contained in the Model Penal Code (1980), § 250.2(1) (a) and (c). <u>Commonwealth v. Chou</u>, 433 Mass. 229, 231-232, 741 N.E.2d 17 ( 2001). The resulting definition of 'disorderly includes:

>   . . . those individuals who, 'with purpose to cause **public inconvenience, annoyance or alarm**, or **recklessly creating a risk thereof**, . . . (a) engage[ ] in fighting or threatening, or in violent or tumultuous behavior; or . . . (c) create[ ] a **hazardous** or physically offensive **condition** by any act **which serves no legitimate purpose** of the actor.'

<u>Id.</u> at 232 (emphasis added). <u>See also Abraham v. Nagle,</u> 116 f.3d 11, 13-14 (1st Cir. 1997). The elements of a disorderly conduct violation are behavior and actions that (1) were reasonably likely to affect the public, (2) created a hazardous condition based on acts that served no legitimate purpose, and (3) recklessly created a risk of public convenience, annoyance or alarm. <u>Id.</u>

For purposes of the disorderly statute, public is defined as "affecting or likely to affect persons in a place to which the public or a substantial group has access." <u>Commonwealth v. A Juvenile</u>, 368 Mass. 580, 586, 334 N.E.2d 617 (1975) (citing Model Penal Code definition quoted in <u>Alegata v. Commonwealth</u>, 353 Mass. 287, 231 N.E.2d

201 (1967)). A person is reckless if (s)he knew, or must have known, that her actions

would create a substantial risk of public inconvenience, annoyance or alarm, but (s)he

chooses, nevertheless, to take the risk and go ahead. Commonwealth v. Welansky, 316

Mass. 383, 397-401, 55 N.E.2d 902-912 (1944); Commonwealth v. Papadinis, 23 Mass.

App. Ct. 570, 574-575, 503 N.E.2d 1334, 1336 (1987), affd, 402 Mass. 73, 520 N.E.2d 1300

(1988). A hazardous condition is one that creates a safety risk for third parties and/or

the individual actor. See Commonwealth v. Bosk, 29 Mass. App. Ct 904, 556 N.E.2d

1055, 1058 (1990) (statute applicable to motorist who stood in traffic lane, forcing

vehicles to pass around him, while debating with police officer and refusing to return to

his car); Colten v. Kentucky, 407 U.S. 104 (1972).

    Thus, to establish on summary judgment that the officers' lacked probable cause

to arrest Plaintiff for disorderly conduct, Plaintiff must show (which he cannot do) that

no disputed issue of material fact exists as to the circumstances within the Officers'

knowledge at the time of the arrest and that he is entitled to judgment as a matter of

law.   If, on the other hand, the evidence shows, as the officers assert, that they asked

Plaintiff for his identification and he refused to provide it, then defendants will be

entitled to judgment as a matter of law, as discussed below.

    **a.    Plaintiff's Conduct Frightened the Public.**

    Plaintiff's conduct unquestionably affected people in a public place to which a

large group had access -- a commuter rail train and platform populated by hundreds of

passengers and bystanders. Witnesses, already frightened by the accident, became

increasingly alarmed by the Plaintiff's behavior. DOF ¶ 45, Def. Ex. 5 at 39-40 (Russell

Dep.).

b.   **Mr. Joseph's Conduct Threatened Public Safety For No Legitimate Purpose**

Plaintiff's refusal to provide identification and his increasingly irrational behavior created a safety risk for the victim who was pinned under the train, the fire department personnel who were administering medical attention to her, the hundreds of passengers and bystanders on the platform and Plaintiff. This was especially so given that the train's engine continued to run even after the accident, and Plaintiff simply had put on the hand brake to hold the train. DOF ¶ 29, Def. Ex. 4 at 34-35 (Iapicca Dep.), Def. Ex. 5 at 14 (Russell Dep.). Moreover, the police officers were concerned about crowd control given the ensuing chaos. DOF ¶ 25, Def. Ex. 5 at 12-13 (Russell Dep.). Several Massachusetts cases have upheld disorderly conduct arrests where refusal to obey police orders created a safety threat. See Commonwealth v. Bosk, 29 Mass. App. Ct. 904, 556 N.E.2d 1055 (1990); Commonwealth v. Mulero, 38 Mss. App. Ct. 963, 650 N.E.2d 360, 363, review denied, 420 Mass. 1106, 652 N.e.2d 145; and Commonwealth v. Carson, 10 Mass. App. Ct. 920, 411 N.E.2d 1337, 1338 (1980).

Further, Mr. Joseph's refusal to provide identification and his agitated behavior served no legitimate purpose. To the contrary, they inflamed an already chaotic and volatile situation. Plaintiff argues that there exists an MBCR policy that the operator is not to leave the train. However, the plaintiff was not taken into custody because he failed to leave the train, he was taken into custody because he refused to identify himself despite repeated requests to do so. Indeed, the plaintiff's supervisor, Mr. Demodena testified that he explained to Mr. Joseph that engineers routinely should provide basic information to the police, such as name and employment by the MBCR. DOF ¶ 50, Def. Ex. 1 at 68-70 (Demodena Dep.). He further stated that engineers should show their engineer license certificate. Id. Thus, contrary to the plaintiff's argument, it

is in fact MBCR policy that engineers must provide identification to law enforcement authorities upon request.

### c.   Mr. Joseph Recklessly Created A Risk of Public Alarm and Annoyance

Finally, Mr. Joseph acted recklessly by refusing to provide identification and behaving in an irrational manner when passengers and bystanders already were frightened by the accident. Under those circumstances, and as the train's engineer experienced in serving the public, he should have realized that his unusual behavior would create further anxiety and panic among the passengers and bystanders. In that situation presented, public safety concerns dictate that he should provide basic identifying information, leave the engineer's compartment and accept help.

### C.   The Fact That An Investigating Officer Initially Considered Arresting Plaintiff for a Lesser Offense Than Disorderly Conduct Is Irrelevant to Determining Whether Probable Cause Exists for His Arrest for Disorderly Conduct or Any other Offense Arising From the Circumstances At the Time of the Arrest.

Plaintiff argues that his arrest was unconstitutional because an investigating officer initially considered arresting him for failure to provide identification to a police officer pursuant to M.G.L. c. 90, § 25, a lesser offense than a disorderly conduct violation. Plaintiff's Memorandum, pp. 3-4. The officer's view of the legal basis for the arrest is irrelevant, however, as was discussed earlier. Rather, the only relevant test is whether a reasonable police officer would have believed under the circumstances that Plaintiff's behavior was a crime. See Devenpeck v. Alford, 125 S. Ct. 588 (2004). For the reasons discussed above, probable causes existed to arrest Plaintiff for disorderly conduct.

II.    **THE INDIVIDUAL OFFICERS' ACTIONS ARE ENTITLED TO QUALIFIED GOOD FAITH IMMUNITY AS THEIR REQUEST FOR PLAINTIFF'S IDENTITY AFTER THE TRAIN STRUCK A WOMAN AND WHEN PLAINTIFF'S BEHAVIOR BECAME INCREASINGLY IRRATIONAL DID NOT VIOLATE ANY CLEARLY ESTABLISHED LEGAL RIGHT.  FURTHER, THE OFFICERS' ACTIONS WERE REASONABLE GIVEN THE EXIGENT CIRCUMSTANCES.**

Even if the Court determines that the officers' lacked probable cause to arrest Plaintiff, the officers' actions would be entitled to qualified good faith immunity.  It is well-established that "government officials performing discretionary function[s] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "To ascertain a defendant's eligibility for such immunity, a court must inquire into the objective legal reasonableness of the defendant's actions, gauged in connection with the mosaic of legal rules that were clearly established when the defendant acted."  Iacobucci v. Boulter, 193 F.3d 14, 21 (1st Cir. 1999).  Massachusetts Courts apply the doctrine of qualified immunity with equal force to claims under the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c. 12, § 11I (Count III).  Duarte v. Healy, 405 Mass. 43, 46, 537 N.E.2d 1230, 1232 (1989).

As will be demonstrated below, the officers did not violate any clearly- established right of Plaintiff to refuse to provide identification during their investigation of an emergency situation.  Furthermore, their actions in asking him for his identity and to leave the control compartment, and arresting him for disorderly conduct, were objectively reasonable in light of the emergency circumstances.

A.     **The Officers' Request for Plaintiff's Identification During Their Investigation of A Train Accident In Which Plaintiff Was the Engineer and Their Arrest of Plaintiff For Disorderly Conduct When His Behavior Became Increasingly Bizarre Did Not Violate Clearly Established Law.**

The First Circuit Court of Appeals has identified a three-step process for evaluating claims of qualified immunity: (1) whether the claimant has alleged the deprivation of an actual constitutional right; (2) whether the right was clearly established at the time of the alleged action or inaction; and (3) if both these questions are answered in the affirmative, whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right. Wilson v. City of Boston, 421 F.3d 45, 52 (1st Cir. 2005).

Plaintiff makes a bald assertion in his Complaint that Defendants' actions violated his rights under the Fourth and Fourteenth Amendments. See Compl., Count I. He asserts vaguely in his Memorandum that the Defendant officers violated § 1983 because they lacked probable cause to arrest him, thus violating his Fourth Amendment rights. See Plaintiff's Memorandum. This argument "sweeps so broadly, however, that it bears very little relationship to the objective legal reasonableness" of the officers' conduct. Iacobucci, 193 F.3d at 22. The "right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense." Id. (internal citation omitted).

As was discussed earlier, Plaintiff did not have a federal constitutional right to refuse to identify himself to the police during the course of their lawful investigation. Hiibel, 124 S. Ct. at 2459. "In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment." Id. at 2458. This is especially so in the emergency circumstances presented here. Thus, the officers' initial request to Plaintiff for identification could not constitute a clear violation of law.

Further, as the Supreme Court recognized recently, "it has been an open question whether the suspect can be arrested and prosecuted for refusal to answer." Id.

Plaintiff was arrested for disorderly conduct. DOF ¶ 48, Def. Ex. 4 at 59-60 (Iapicca Dep.). The incident began, however, when he refused to provide the police officers with his identification, which they had requested to as part of their investigation and to help secure the safety of the commuter rail train in the emergency circumstance. DOF ¶ 33, Def. Ex. 4 at 24, 33 (Iapicca Dep.). Despite the police officers' requests, Plaintiff also refused to leave the control compartment. DOF ¶ 39, Def. Ex. 4 at 39 (Iapicca Dep.). Thereafter, his behavior became increasingly bizarre and irrational. DOF ¶ 41, Def. Ex. 4 at 38 (Iapicca Dep.). Given the emergency nature of the accident scene and that Plaintiff's behavior was causing already frightened passengers and bystanders to become further terrified, the police arrested Plaintiff for disorderly conduct to protect the public safety. Several Massachusetts cases have upheld disorderly conduct arrests where refusal to obey police orders have created a public safety threat. See discussion supra in Subsection I.B.2. None, however, has specifically addressed the type of situation presented here. Given these unique facts, and the unclear reach of Hiibel, the Plaintiff's purported right to refuse to identify himself to police and to act in a manner that fueled the public's fear and threatened public safety cannot be deemed to have been clearly established. Accordingly, the individual officers are immune from liability in this suit.

**B.    An Objectively Reasonable Police Officer Would Have Believed That The Officers Actions Were Lawful Given The Emergency Circumstances of the Train Accident.**

Even if the Court determines that Plaintiff has alleged the deprivation of an actual constitutional right and that the right was clearly established at the time of the officers' action, an objectively reasonable police officer would have believed that the

officers' actions were lawful. When "officers of reasonable competence could disagree on [the existence of probable cause], immunity should be recognized." Mallry v. Briggs, 475 U.S. 335, 341 (1986).

For the reasons discussed earlier, probable cause existed for the officers to arrest Plaintiff for disorderly conduct. Even if the Court makes a contrary determination, so long as the officers acted reasonably in their belief that probable cause existed, qualified immunity will bar recovery. "We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable." Anderson v. Creighton, 483 U.S. 635, 641 (1987). Reasonableness in this context is not the same as absolute certainty; the conclusions reached by the officers need not be "ironclad." Acosta v. Ames Department Stores, Inc., 386 F.3d 5, 11 (1st Cir. 2004). "Probable cause determinations are, virtually by definition, preliminary and tentative." Id.

Furthermore, even though "both probable cause and qualified immunity analyses require the application of a reasonableness standard, qualified immunity requires a 'somewhat lesser showing.'" Nolan v. Krajcik, 384 F.Supp.2d 447, 467 (D. Mass. 2005), quoting Cox v. Hainey, 391 F.3d 25, 31 (1st Cir. 2004). Particularly measured against this lower standard, the defendant officers acted reasonably in concluding that Plaintiff 's conduct was disorderly. As a result qualified, immunity shields their actions from liability.

The reasonableness of an officer's determination of probable cause "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . The calculus of reasonableness must embody allowance

for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving." <u>Graham</u>, 490 U.S. 386, 396-397 (1989). Given the emergency context confronting the police officers, their determination that Plaintiff was a threat to himself and public safety and their determination that probable cause existed to arrest Plaintiff for disorderly conduct was eminently reasonable.

Thus, even if the Court decides that Defendants were mistaken in their legal analysis of disorderly conduct, they undoubtedly acted reasonably when deciding that probable cause existed. Qualified immunity "has been successfully invoked in this circuit where a police officer made a reasonable, if arguably mistaken, call on a close legal issue." <u>Abraham</u>, 116 F.3d at 15. A "number of Massachusetts cases have upheld disorderly conduct arrests where a refusal to obey police orders created a safety threat." <u>Id.</u> at 14. In accordance with established First Circuit law, this Court should grant qualified immunity to the officers. To deny them immunity from suit effectively would discourage police from managing future large-scale emergencies for fear of legal reprisal.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that Plaintiff's motion for summary judgment be denied.

Defendants,
By their attorneys,
BRODY, HARDOON, PERKINS & KESTEN, LLP


        /s/ Leonard H. Kesten
Leonard H. Kesten. BBO No. 542042
Judy A. Levenson, BBO NO. 295570
One Exeter Plaza
Boston, MA 02116
(617) 880-7100

Dated:  October 26, 2005