UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOEY JOSEPH )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>Officer P. IAPICCA, Officer LENTINI, )<br>Officer RUSSELL, Officer VOEGELIN, )<br>and the TOWN OF READING, )<br>    Defendants. )<br>) | C.A. NO. 04-11421-JLT |

**PLAINTIFF JOSEPH'S PROPOSED REPLY TO THE DEFENDANTS'
OPPOSITION TO HIS MOTION FOR SUMMARY JUDGMENT**

The Plaintiff hereby submits this proposed memorandum in reply to the Defendant's opposition to his motion for summary judgment.

### ARGUMENT

**I. THE PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HIS CLAIM OF FALSE ARREST**

**A. HIIBEL IS IRRELEVANT TO THE PLAINTIFF'S CLAIMS**

The Defendants devote three pages of their memorandum to a discussion of the Supreme Court case Hiibel v. Sixth Judicial Dist. Court, 124 S. Ct. 2451 (2004). However, Hiibel is not relevant to whether the Plaintiff was falsely arrested for disorderly conduct. The Hiibel case dealt with a facial challenge to a Nevada criminal statute that required anyone who was stopped by the police to provide his name to the officer. Id. at 2453. Based on the limited intrusion required by the statute, and the fact that the statute demanded the officer have at least a "reasonable suspicion" of criminal activity before stopping someone and asking his name, the Court found that the law did not violate the Fourth Amendment. Id. at 2460; see also Terry v. Ohio, 392 U.S. 1

1

(1968) (discussing reasonable suspicion). However, Massachusetts has no such statute, so the Defendants cannot justify their arrest of the Plaintiff by claiming probable cause to arrest him for a crime that does not exist.

Erroneously relying on Hiibel, the Defendants also contend that the Plaintiff had no constitutional right to refuse the Defendants' demands for identification. This contention is also irrelevant to the case at bar. Moreover, even if relevant, Hiibel lends no support to the Defendants' position as the Court explicitly limited its holding to the Nevada statute at issue, which only required that a suspect give his name: "[A]s we understand it, the statute does not require a suspect to give the officer a driver's license or any other document. Provided that the suspect either states his name or communicates it to the officer by other means--a choice, we assume, that the suspect may make--the statute is satisfied and no violation occurs." Hiibel, 124 S. Ct at 2460. Here, the Plaintiff did give his name[1], but declined to provide documentary identification, as was his right according to Hiibel.

### B. THE DEFENDANTS' HAVE PRODUCED INSUFFICIENT EVIDENCE OF PROBABLE CAUSE TO WARRANT A TRIAL

The Defendants have failed to show a trial-worthy issue which could support their claim that they had probable cause to arrest the Plaintiff for disorderly conduct. Since all the elements of a criminal statute must be satisfied, if the Defendant fails to raise sufficient evidence of a material dispute as to any one element, then the Plaintiff is entitled to judgment as a matter of law.

---

[1] Even the Defendants conceded that he provided his first name and that he asked to wait for his supervisors to arrive before providing more information. See Pl. Stmnt. Of Mat. Facts at 8. Such a request is not tantamount to the refusal to offer any information, as implied in the Defendants' motion.

2

### 1. There no evidence that the Plaintiff acted purposefully or recklessly

The Defendants have produced no evidence that the Plaintiff's conduct was reckless or purposeful. The section of their opposition discussing this element of disorderly conduct is one paragraph long. In fact, they do not cite any portion of the record. Instead, their argument merely contains the bald assertion that the Plaintiff acted "recklessly."

The Defendants then proceed to give an erroneous definition of "recklessly." In doing so, they claim that the Plaintiff "<u>should have</u> realized that his unusual behavior would create further anxiety and panic among the passengers and bystanders." Thus the Defendants are implying that the criminal law uses an objective standard for "recklessness." <u>See</u> Def. Opposition at 13 (emphasis added).

On the contrary, what the Plaintiff "should have realized" is irrelevant, the Defendants must show that he <u>did</u>, in fact, subjectively realize his conduct would alarm the public, a burden they cannot carry. <u>See</u> <u>Commonwealth</u> v. <u>Feigenbaum</u>, 404 Mass. 471, 475 (1989), <u>citing</u> Model Penal Code §2.02 (2)(c) (recklessness is analyzed subjectively); <u>see</u> <u>also</u> <u>Farmer</u> v. <u>Brennan</u>, 511 U.S. 825, 836-37 (1994) ("The civil law generally calls a person reckless who acts or…fails to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known…The criminal law, however, generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware.")

### 2. There is insufficient evidence that the Plaintiff's conduct actually alarmed the public

As with the element discussed above, the Defendants' argument that the Plaintiff's conduct actually alarmed the public is one paragraph long. There is but one

reference to the record—the deposition of the Defendant Russell. However, the pages cited in that deposition do not offer this Court sufficient evidence to defeat the Plaintiff's motion.

In his deposition, Defendant Russell stated his belief that the Plaintiff's "defiance…contribute[d] to people being terrified." See Def. Stmnt. of Facts at 45. This is essentially the extent of the Defendants' evidence on this point. Russell formed this conclusion, not because he actually asked anyone or because anyone told him so, but rather because he could see "the looks on their faces." Id. Based solely on this observation, he was somehow was able to determine that this "fear" had nothing to do with a woman being hit by a train, but was actually based on the Plaintiff's refusal to give the police his driver's license. Id. This contention strains the imagination and can hardly be said to raise a material dispute of fact.

### 3. The Plaintiff's actions served a legitimate purpose and there is no evidence that they created a hazardous condition

The Defendants' claim that the Plaintiff created a hazardous condition is specious bordering on the absurd since it was highly speculative that he would decide to re-start the engine and run over the fire personnel operating under the train. Moreover, such a concern in no way explains why his failure to produce identification or otherwise respond to police questioning could in any way create that danger to public safety. As a matter of fact, the Defendants specifically state in their opposition that "the plaintiff was not taken into custody because he failed to leave the train, he was taken into custody because he refused to identify himself despite repeated requests to do so." See Def. Opposition at 12. As such, the Defendants are arguing that the hazard was created, not because the engineering equipment could not be secured, but rather because they could not verify the

engineer's name nor discover his social security number and that, somehow, this lack of knowledge created a risk to public safety.

The cases cited by the Defendants do not support their position because the conduct in those cases was far more egregious. In <u>Commonwealth</u> v. <u>Carson</u>, 10 Mass. App. Ct. 920, 921 (1980), the defendant was drunk, belligerent, swore at the police and yelled to such an extent that a large crowd gathered and encouraged him to misbehave even further. In <u>Commonwealth</u> v. <u>Mulero</u>, 38 Mass. App. Ct. 963, 965 (1995), the defendant refused to keep his hands on the car during a <u>Terry</u> stop, flailed them about in a "threatening and tumultuous" manner, and was otherwise belligerent to the police officer. Finally, in <u>Commonwealth</u> v. <u>Bosk</u>, 29 Mass. App. Ct. 904, 906 (1990), the defendant stood in the travel lane of a busy highway, thereby causing traffic to swerve, and repeatedly refused to return to his car. Instead, he demanded to see the radar printout from the officer who had just stopped him for speeding. <u>Id</u>.

Here there is no evidence that the Plaintiff acted violently towards the officers, no evidence that a crowd had gathered to witness the incident, and no viable argument that the Plaintiff's actions created a hazard to public safety. Moreover, the Plaintiff's purposes were "legitimate."[2] He did not want to speak to the officers, other than providing his name, because MBCR policy required <u>supervisors</u> to co-ordinate with the police after an accident, not engineers, and because he did not want to leave his equipment unattended.

---

[2] Again, the Defendants fail to analyze this element from the Plaintiff's subjective point of view. <u>See</u> Model Penal Code §250.4 ("[T]he [legitimate purpose defense] . . . is [defined] broadly to exclude. . . any conduct that directly furthers some legitimate desire or objective of the actor.")

### III. THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE A REASONABLE OFFICER WOULD HAVE KNOWN THERE WAS NO PROBABLE CAUSE TO ARREST THE PLAINTIFF

The Supreme Court has set up a sequential analysis for determining whether a defendant is entitled to qualified immunity. See Saucier v. Katz, 533 U.S. 194, 201-06 (2001). This circuit has construed that framework to consist of three inquiries: "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004). The Defendants here are not entitled to qualified immunity because no reasonable officer would have thought he had probable cause to arrest the Plaintiff. Id.

The Fourth Amendment undoubtedly recognizes the right to be free from unreasonable seizures of the person. Cox v. Hainey, 391 F.3d 25, 30 (1st Cir. 2004), citing Beck v. Ohio, 379 U.S. 89, 91 (1964). Moreover, the First Circuit has held that an arrest without probable cause is clearly established as a constitutional violation. Cox, 391 F.3d at 30, citing Wagenmann v. Adams, 829 F.2d 196, 209 (1st Cir. 1987); see also Fares v. Mulligan, 1994 U.S. Dist. LEXIS 13040 at *16 (D. Mass. 1994) ("it was clearly established in November 1989 that abusive speech or expressive conduct, without more, was not subject to criminal sanction" under the Massachusetts disorderly conduct statute.)

Thus, the only question that remains is whether a reasonable officer could have believed that probable cause existed to arrest the Plaintiff. Cox, 391 F.3d at 31, citing

6

Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992). In order for the Defendants' actions to be considered reasonable, "the presence of probable cause [must be] arguable…" Ricci v. Urso, 974 F.2d 5, 7 (1st Cir. 1992).

As discussed above, no reasonable officer would have thought he had probable cause to arrest the Plaintiff for disorderly conduct. As a preliminary matter, the Massachusetts disorderly conduct statute has been extensively litigated and has received repeated judicial scrutiny and interpretation. See Commonwealth v. Feigenbaum, 404 Mass. 471, 474 (1989) ("Judicial construction of the term "idle and disorderly" has had a tortured history in the case law of this Commonwealth."); see also Alegata v. Commonwealth, 353 Mass. 287, 302 (1967) (redefining what conduct can constitutionally be considered disorderly); Commonwealth v. A Juvenile, 368 Mass. 580, 587-97 (1975) (same). Thus, the conduct which could qualify as disorderly had been clearly established at the time of the Plaintiff's arrest such that a reasonable officer would be aware of what constituted a violation of the statute.

Moreover, the Defendants' argument that Hiibel creates uncertainty in the law is inaccurate. The Defendants twist the holding of Hiibel—that a Nevada criminal statute requiring a suspect to provide his name to the police does not violate the Fourth Amendment—into an argument that the officers are entitled to qualified immunity in this case. The only question in Hiibel was whether the Nevada statute was constitutional. The Court's holding that it was constitutional does not imply the converse—that anyone who refuses to give identification to the police can constitutionally be arrested in any state in the country.

First of all, and most importantly, Massachusetts has no comparable statute to the Nevada statute at issue in Hiibel. Second, the statute in Hiibel only required that a suspect give his name. Even assuming that the Massachusetts disorderly conduct statute somehow encompasses the same conduct as the Nevada "Stop and Identify" statute in Hiibel, the Court's holding in that case specifically undercuts the Defendants' contention that it would be reasonable to arrest someone for failure to provide documentary identification. See Hiibel, 124 S. Ct at 2460 (noting that the statute only requires that a suspect provide his name).

To further support the third prong of the qualified immunity analysis, the Defendants contend that they reasonably believed that the "Plaintiff was a threat to himself and public safety." See Def. Opposition at 18. Given that the Defendants' proffered reason[3] for the arrest—the failure to produce identification—is so far removed from any possibility of public or personal harm, it is hard to see how the officers were reasonable in arresting the Plaintiff. On the contrary, it is decidedly unreasonable for the police to make unlawful demands and then arrest someone who declines to heed those demands. See Iacobucci v. Boulter, 193 F.3d 14, 25 (1st Cir. 1999) ("a police officer is not a law unto himself; he cannot give an order that has no colorable legal basis and then arrest a person who defies it.")

## CONCLSUSION

Therefore, the Plaintiff requests that this Court grant his motion for summary judgment.

---

[3] The Defendants are correct that the Supreme Court case Devenpeck v. Alford, 125 S. Ct. 588, 594 (2004), requires a purely objective analysis of probable cause and renders irrelevant the stated reasons for the arrest, which in this case was "refusing to submit" to an officer. See Pl. Stmnt. of Mat Facts at 8. However, the fact that the Defendants were forced to ponder a charge for the Plaintiff after he was already in custody calls into question the veracity of their factual support for the disorderly offense and at the very least precludes summary judgment for the Defendants on qualified immunity grounds.

                                        Respectfully Submitted,
                                        The Plaintiff Joey Joseph
                                        By his attorneys

DATED: November 2, 2005

                                        //S//Michael Tumposky
                                        Stephen B. Hrones (BBO No. 242860)
                                        Jessica D. Hedges (BBO No. 645847)
                                        Michael L. Tumposky (BBO No. 660618)
                                        HRONES, GARRITY & HEDGES
                                        Lewis Wharf–Bay 232
                                        Boston, MA 02110-3927
                                        T) 617/227-4019

**CERTIFICATE OF SERVICE**

    I, Michael Tumposky, hereby certify that, on this 2nd day of November, 2005, I served one true and correct copy of the foregoing, where unable to do so electronically, by United States First-Class Mail, postage prepaid, to all counsel of record in this matter.

                                        //S//Michael Tumposky
                                        Michael Tumposky