UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOEY JOSEPH,   )
       Plaintiff   )   CIVIL ACTION
    )   NO. 04-11421-JLT
    )
VS.   )
    )
OFFICER P. IAPICCA, OFFICER LENTINI,   )
OFFICER RUSSELL, OFFICER VOEGELIN, AND   )
THE TOWN OF READING,   )
       Defendants   )
    )

## **DEFENDANTS' FIRST REQUEST FOR JURY INSTRUCTIONS**

Now come the Defendants in the above-referenced matter and pursuant to

Rule 51 of the Fed. R. Civ. P. respectfully submits the following requests for

Instructions to the jury:

Request No. 1

The burden of proof is on the plaintiff in a §1983 civil rights action, such as this one, to "prove by a preponderance of the evidence that he or she was deprived of a right secured by the Constitution by a person acting under the color of state law." <u>Tatro v. Kervin</u>, 41 F.3d 9, 14 (1st Cir. 1994) (citing <u>Pittsley v. Warish</u>, 927 F.2d 3, 6 (1st Cir.), <u>cert. denied</u>, 502 U.S. 879, 112 S.Ct. 226 (1991); <u>Fernandez v. Rapone</u>, 926 F. Supp. 255, 260 (D. Mass. 1996).

Request No. 2

A police officer is presumed to discharge his or her duties impartially and according to the law. This presumption cannot be overcome except by clear and convincing evidence to the contrary. NLRB v. Bibb Mfg., 188 F. 2d 825 (8th Cir. 1951). Unless you are persuaded by clear and convincing evidence that the defendant police officers did not discharge their duties impartially and according to the law, you should enter a verdict in favor of the officers.

Request No. 3

In order to find a police officer liable for any action taken in the performance of his official duties, you must find that he knew or reasonably should have known that the actions he took within this sphere of his official responsibilities would violate clearly establish constitutional rights of the plaintiff. <u>Anderson v. Creighton</u>, 43 U.S. 635 (1987).

**CLAIM UNDER 42 U.S.C. § 1983**

Request No. 4

42 U.S.C. § 1983 provides: "Every person who, under color or any statute, ordinance, regulation, custom, or usage of any State or Territory ... subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ..." 42 U.S.C. § 1983.

Request No. 5

In order to prevail in this case, the plaintiff must first and foremost establish that his rights protected by the United States Constitution have been violated. Plaintiff here contends that his rights protected by the Fourth Amendment have been violated.

Request No. 6

The Fourth Amendment of the Constitution of the United States provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated, and no warrants shall issue, but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized." U. S. Const. Amend. IV.

Request No. 7

You must determine then whether the defendant officers seized the plaintiff and, if so, whether their actions were with or without probable cause.

Request No. 8

Under the Fourth Amendment of the United States Constitution, probable cause exists if the facts and circumstances within a police officer's knowledge and of which the officer had reasonably trustworthy information are sufficient to warrant a person to believe that a crime has been committed or is being committed.  Alexis v. McDonald's Restaurants of Massachusetts, Inc. 67 F.3d 341 (1st Cir. 1995) quoting Carroll v. United States, 267 U.S. 132 (1925); United States v. Drake, 673 F.2d 15 (1st Cir. 1982).

Request No. 9

Where an arrest is "challenged as unsupported by probable cause [it] is deemed 'objectively reasonable' unless 'there *clearly* was no probable cause at the time the arrest was made.' " *Topp v. Wolkowski,* 994 F.2d 45, 48 (1st Cir.1993) Probable cause to arrest exists where "the facts and circumstances within [the police officer's] knowledge and of which [she] had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [arrestee] had committed or was committing an offense." *Rivera,* 979 F.2d at 263 (quoting *United States v. Figueroa,* 818 F.2d 1020, 1023 (1st Cir.1987)). "Probable cause is to be determined based on 'the collective knowledge and information of all the officers involved.' " *See United States v. Bizier,* 111 F.3d 214, 217 (1st Cir.1997) (quoting

Request No. 10

The "probable cause" analysis entails " 'an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time' and not [an assessment of] the officer's state of mind at the time the challenged action was taken." Id.

Request No. 11

The issue is whether a reasonably competent police officer with knowledge of the facts actually known by the arresting officer, would have concluded that probable cause existed to arrest for the offense the arresting officer stated or for any other offense arising from the circumstances.   Devenpeck v. Alford, 125 S. Ct. 588, 594 (2004).

Request No. 12

Probable cause need not exist for the offense the officer stated as the reason for the arrest so long as probable cause exists for an arrest on another offense. Devenpeck v. Alford, 125 S. Ct. 588 (2004).

Request No. 13

You thus are to consider whether probable cause existed in terms of the stated offense of disorderly conduct or any other offense.

Request No. 14

In assessing probable cause, you should keep in mind that a law enforcement officer may form a reasonable suspicion during the course of an investigation that something is amiss or merits further investigation. Hiibel, 124 S. Ct. 2451, 2458 (2004); Commonwealth v. Feyenord, 62 Mass. App. Ct. 200, 203 (2004).

Request No. 15

You thus may consider whether the plaintiff's behavior enhanced the officer's reasonable suspicion.

**Investigation and Request for Identification.**

Request No. 16

Asking about one's identity or a request for identification by the police then does not, by itself, constitute a Fourth Amendment seizure.  <u>Hiibel v. Sixth Judicial District Court of Nevada, Humbolt County</u>, 124 S. Ct. 2451, 2458 (2004), quoting <u>INS v. Delgado</u>, 466 U.S. 210 (1984).

Request No. 17

In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment." <u>Hiibel</u>, 124 S. Ct. at 2458.

Request No. 18

There is no federal constitutional right to refuse an officer's request for identification during the course of a lawful investigation.  See Marrs v. Tuckey, 362 F.Supp.2d 927, 930 (E.D. Mich. 2005).

Request No. 19

The defendants here were entitled to seek the plaintiff's identification.

Request No. 20

In fact, the law requires that every railroad employee whose duties relate to the transportation of passengers or baggage wear a distinguishing badge, as well as a uniform and cap.  M.G.L. c. 160,  § 177.

Request No. 21

An employee's failure to wear or display a badge prohibits him from performing any of the duties of his office.  M.G.L. c. 160, § 177.

Request No. 22

A failure to produce identification can reasonably give rise to suspicion of offenses and justify heightened precautions for safety.  Commonwealth v. Lantigua, 38 Mass. App. Ct. 526, 528, 649 N.E.2d 1129 (1995) (inability to produce license or registration).

**Criminal Offenses**

### Unauthorized or Unlicensed Operation of a Railroad Car

Request No. 23

Under the law, only authorized, i.e. licensed, persons may operate a railroad car or vehicle.  M.G.L. c. 159, § 103.

Request No. 24

It is a criminal offense for person "without right", again that is without license or authorization, to operate a railroad car or vehicle.  M.G.L. c. 159, § 103. See analogously Commonwealth v. Wolf, 34 Mass. App. Ct. 949, 614 N.E.2d 679 (1993).

**Gross Negligence of Common Carrier**

Request No. 25

You may also consider that it is a criminal offense if a person in control of a common carrier, such as a train, is guilty of gross negligence in the operation of that train.  M.G.L. c. 265, § 30.

Request No. 26

Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence. It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected. It is a heedless and palpable violation of legal duty respecting the right of others. Altman v. Aronson, 231 Mass. 588, 591, 592, 1212 N.E. 505, 506 (1919).

**Disorderly Conduct**

Request No. 27

The elements of a disorderly conduct violation are behavior and actions that (1) were reasonably likely to affect the public, (2) created a hazardous condition based on acts that served no legitimate purpose, and (3) recklessly created a risk of public convenience, annoyance or alarm. Commonwealth v. Chou, 433 Mass. 229, 231-232, 741 N.E.2d 17 ( 2001). See also Abraham v. Nagle, 116 f.3d 11, 13-14 (1st Cir. 1997). See M.G.L. c. 272, § 53.

Request No. 28

For purposes of the disorderly conduct statute, public is defined as "affecting or likely to affect persons in a place to which the public or a substantial group has access." Commonwealth v. A Juvenile, 368 Mass. 580, 586, 334 N.E.2d 617 (1975).

Request No. 29

A person is reckless if he knew, or must have known, that her actions would create a substantial risk of public inconvenience, annoyance or alarm, but (s)he chooses, nevertheless, to take the risk and go ahead.  <u>Commonwealth v. Welansky</u>, 316 Mass. 383, 397-401, 55 N.E.2d 902-912 (1944);  <u>Commonwealth v. Papadinis</u>, 23 Mass. App. Ct. 570, 574-575, 503 N.E.2d 1334, 1336 (1987), *aff'd*, 402 Mass. 73, 520 N.E.2d 1300 (1988).

Request No. 30

A hazardous condition is one that creates a safety risk for third parties and/or the individual actor.  See Commonwealth v. Bosk, 29 Mass. App. Ct. 904, 556 N.E.2d 1055, 1058 (1990); Colten v. Kentucky, 407 U.S. 104 (1972).

**Disturbing the Peace**

Request No. 31

The charge of disturbing the peace "proscribes conduct which tends to annoy all good citizens and does in fact annoy anyone present not favoring it." Commonwealth v. Jarrett, 359 Mass. 491, 498, 269 N.Ed. 657  (1971).

Request No. 32

To amount to disturbing the peace, the defendant's acts must have been voluntary, unnecessary, and contrary to normal standards of conduct."

Instruction 5.44 of the Model Jury Instructions for Use in the District Court.

Request No. 33

It is not necessary that the conduct involve unreasonable disruptiveness, making loud noise or engaging in tumultuous conduct.

Request No. 34

The Courts have refused to define more precisely the type of conduct permitted in various places at varying times.  Instead, it is stated that "common sense in most cases will define proscribed conduct." <u>Commonwealth v. Canty</u>, 65 Mass. App. Ct. 1113 (2006).

### **Neglect or Refusal to Assist Officer**

Request No. 35

It is also a crime in this Commonwealth when someone, being required in the name of the commonwealth by a police officer, neglects or refuses to assist that police officer in the execution of his office in a criminal case, in the preservation of the peace or in the apprehension or securing of a person for a breach of the peace.  M.G.L.A. 268 § 24.

**Qualified Immunity**

Request No. 36

If you find that the plaintiff has proved the elements of his Section 1983 claim against the particular defendant that you are considering, then you must proceed to consider whether this defendant is entitled to what the law calls "qualified immunity." Under qualified immunity, the issue is not the correctness of a defendant's conduct, but rather the objective reasonableness of his chosen course of action given the circumstances confronting him at the scene.

Request No. 37

A particular defendant is entitled immunity if a reasonable public official in defendant's position would not have been expected at the time to know that his conduct violated clearly established federal law.

Request No. 38

In deciding what a reasonable public official should have known about the legality of his conduct, you may consider the nature of that defendant's official responsibilities, the information that was known to the defendant or not known to him at the time of the incident in question, and the events that confronted him. Thus, you must ask yourself what a reasonable official in the particular situation of the defendants would have believed about the legality of his conduct. If you find that a reasonable officer in the defendant's situation would have believed that his, or their conduct was lawful, that officer is protected from liability by qualified immunity.

Request No. 39

Government officials performing discretionary functions such as arrests are shielded from civil damages so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This principle, known as the doctrine of qualified immunity, ensures that police officers and other government actors will be able to reasonably anticipate when their conduct may give rise to liability.

Request No. 40

An official performing discretionary functions has qualified immunity from damages so long as a reasonable official in the defendant's position could have believed his conduct was lawful, in light of clearly established law and the information possessed by that official at the time of the challenged conduct. Harlow v. Fitzgerald, 457 U.S. 800 (1982) and Anderson v. Creighton, 483 U.S. 635 (1987).

Request No. 41

The principle of qualified immunity shields government officials who perform discretionary functions from civil liability for money damages when their conduct does not violate "clearly established" statutory authority or constitutional rights of which a reasonable person would have known. <u>Roldan-Plumey v. Cerezo-Suarez</u>, 115 F.3d 58, 65 (1st Cir. 1997), quoting <u>Nereida-Gonzalez v. Tirado-Delgado</u>, 990 F.2d 701, 704 (1st Cir. 1993).

Request No. 42

The doctrine of qualified immunity is intended to give ample room for reasonable but mistaken judgments by police officers. Orsatti v. New Jersey State Police, 71 F.3d 480, 484. This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued. Hunter, 502 U.S. at 229. The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether [his actions are] legal in those circumstances. If an officer's mistake as to what the law requires is reasonable, however, the officer is entitled to immunity. Saucier v. Kate, 121 S. Ct. 2151,2158.

Request No. 43

Your evaluation of the qualified immunity defense is a two-step process. First, you must decide should decide whether the conduct alleged by the plaintiff violated a clearly established principle of law. If so, you should inquire whether the unlawfulness of the action would have been apparent to an objectively reasonable officer. See Showers v. Spangler, 182 F.2d 165, 171 (3d Cir. 2000).

Request No. 44

Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken. <u>Anderson v. Creighton</u>, 483 U.S. 635, 639 (1987). The appropriate inquiry is whether "a reasonable officer could have believed his conduct to have been reasonable under the law." <u>Kim v. Gant</u>, 1997 WL 535138 at * 10 (E.D. Pa. 1997).

Request No. 45

The doctrine of qualified immunity with equal force to claims under the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c. 12, § 11I (Count III). <u>Duarte v. Healy</u>, 405 Mass. 43, 46, 537 N.E.2d 1230, 1232 (1989).

**<u>Damages</u>**

Request No. 46

In order for plaintiff to be able to recover damages under 42 U.S.C. § 1983, the plaintiff must prove by a preponderance of the evidence all of the following facts: 1. that the defendants knowingly deprived him of his rights; 2. that when the plaintiff was deprived of his rights, the defendants were acting under the color of state law; 3. that the defendants were responsible for actions of which the plaintiff complains; and 4. that the actions complained of were the proximate cause of damage to the plaintiff. City of Oklahoma v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427 (1985); 3 Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions. Civil § 103.03 (4th Ed. 1987)

Request No. 47

For the defendants to be liable for damages, the plaintiff has the burden of proving by a preponderance of the evidence that whatever injury he suffered was proximately caused by the conduct of the defendants. That is, you cannot find that the defendants violated the plaintiff's constitutional rights unless you may find that there is a sufficient causal connection between the defendants' acts and the plaintiff's alleged injury. To determine whether there is proximate cause, you must determine whether there is an affirmative link between the defendants' acts and the alleged injury. Fernandez v. Chardon, 681 F.2d 42, 55 (1st Cir. 1982), aff'd Chardon v. Soto, 462 U.S. 650 (1983); Rizzo v. Goode, 423 U.S. 362, 371 (1976).

Respectfully submitted,
The Defendants,
By their attorneys,


/s/ Leonard H. Kesten
Leonard H. Kesten, BBO # 542042
Brody, Hardoon, Perkins & Kesten, LLP
One Exeter Plaza
Boston, MA   02116
(617) 880-7100

Date:  March 1, 2006